# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

MARY JEANENE HOOKER,

                          Plaintiff,

              -vs-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**DECISION AND ORDER**

**17-CV-6415-CJS**

## APPEARANCES

For the Plaintiff:                    Anthony John Rooney, Esq.
                                      Kenneth R. Hiller, Esq.
                                      Law Offices of Kenneth Hiller
                                      6000 North Bailey Avenue, Suite 1A
                                      Amherst, NY 14226
                                      (716) 564-3288

For the Defendant:                  June Lee Byun, Esq.
                                        Monika Crawford, Esq.
                                        Social Security Administration
                                      Office of General Counsel
                                      26 Federal Plaza, Room 3904
                                      New York, NY 10278
                                      (212) 264-0981

                                      Kathryn L. Smith, A.U.S.A. (*oral argument*)
                                      United States Attorney's Office
                                      100 State Street, Fifth Floor
                                      Rochester, New York 14614
                                      (585) 263-6760

## INTRODUCTION

**Siragusa, J.** Mary Jeanene Hooker ("Plaintiff") brings this action pursuant to Titles II

and XVI of the Social Security Act seeking review of the final decision of the Commissioner of

Social Security ("Commissioner") denying her application for disability and supplemental secu-

rity income benefits. Presently before the Court are the parties' competing motions for judg-ment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court denies the Commissioner's motion and grants Plaintiff's application, re-manding the matter pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On December 11, 2013, Plaintiff filed simultaneous claims for Title II disability benefits and Title XVI supplemental security income benefits. She alleged disability commencing on January 16, 2011, because of gastroparesis with irritable bowel syndrome ("IBS"), and depres-sive and anxiety disorders. The Social Security Administration denied her claims on April 2, 2014, and she appeared before an Administrative Law Judge ("ALJ") for a hearing on Septem-ber 10, 2015, at which a vocational expert also testified. Plaintiff proceeded *pro se* at the hear-ing. The ALJ issued a decision on March 23, 2016, denying her benefits, which Plaintiff ap-pealed. The Appeals Council affirmed the ALJ's decision on April 27, 2017, and Plaintiff com-menced this action pursuant to 42 U.S.C. § 405(g) on June 25, 2017. The Court heard oral argument on April 12, 2018.

## THE ALJ'S DECISION

Applying the Commissioner's five-step sequential evaluation for adjudicating disability claims, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2016. At step one, the ALJ found she had not en-gaged in substantial gainful activity since January 16, 2011, which was also the onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: gastroparesis with IBS, and depressive and anxiety disorders. R. 19. However, at step three, the ALJ also

determined that the impairments, neither singularly or together, met or medically exceed the severity of one of the Commissioner's listed impairments. R. 19–20.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). He added the following restrictions: she is limited to work settings without excessive background noise; she can have no public interaction and only superficial contact with coworkers and supervisors; and she can do no assembly line or fast paced work. R. 20–21. The ALJ determined that Plaintiff was unable to perform any past relevant. R. 23.

At step five, considering her age, education, work experience, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, specifically: cleaner, assembler, and sorter. R. 24. Accordingly, the ALJ found Plaintiff not disabled. R. 24.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff argues that the ALJ was wrong when he determined that Plaintiff retained the RFC for light work. Plaintiff argues that the ALJ erred in weighing the opinions of her therapist Ms. Morgan-DeVelder, did not properly develop the record regarding her IBS, and granted only some weight to consultative examiners thereby creating a gap in the record.

Plaintiff's residual functional capacity ("RFC"), both mentally and physically, is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, an ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue,* 631 F.Supp.2d 200, 221 (N.D.N.Y.2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue,* No. 5:07-CV-0803 (LEK/VEB), 2009 WL 1940539, *9 (N.D.N.Y. Jul. 6, 2009) (citing 20 C.F.R. § 404.1545(b-e)), *aff'd* 370 Fed. Appx. 231 (2d Cir. 2010).

### *Lacy M. Morgan-DeVelder, MS, LMF*

Lacy M. Morgan-DeVelder is a marriage and family therapist licensed in New York State.[1] Plaintiff and the Commissioner agree that the rules do not consider Ms. Morgan-DeVelder an acceptable medical source. 20 C.F.R. §§ 404.1502. Nevertheless, the rules, and a ruling, require that the ALJ evaluate her opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c)

---

[1] License No. 754 issued on April 9, 2009, and currently valid through September 2020. NYSED.gov Verification Search, *available at* http://www.op.nysed.gov/ opsearches.htm (last accessed on April 4, 2018).

("Evaluating opinion evidence for claims filed before March 27, 2017"); SSR 06-3p ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment (s) and how it affects the individual's ability to function.").

Here, the ALJ reviewed records from Ms. Morgan-DeVelder, which she received after the hearing. R. 22. In determining that Ms. Morgan-DeVelder's conclusions were not supported by her treatment records, the ALJ relied on a number of Plaintiff's statements that were recorded in Ms. Morgan-DeVelder's records concerning the source of Plaintiff's anxiety and her frustrations with her then-current living situation. R. 22. The ALJ concluded, "the claimant's statements about her activities are contradictory to the provider's medical source statement which indicate severe limitations that would preclude those activities. Therefore, there the undersigned accords the opinion little weight." R. 22.

Plaintiff argues that Ms. Morgan-DeVelder's opinions were entitled to some weight, citing, among other cases, *Pogozelski v. Barnhart*, No. 03 CV 2914 (JG), 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) ("some weight should still have been accorded to Flournoy's opinion based on his familiarity and treating relationship with the claimant."). In particular, she refers to Ms. Morgan-DeVelder's September 4, 2015, Mental Residual Functional Capacity Assessment. R. 378–81. In it, Ms. Morgan-DeVelder found marked limitations in Plaintiff's ability to understand and remember detailed instructions, her ability to carry out very short and simple instructions, her ability to interact appropriately with the general public, and her ability to respond appropriately to changes in the work setting. She found extreme limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended

periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, travel in unfamiliar places or use public transportation, and tolerate normal levels of stress.

The Commissioner points out that in contrast to the therapist's opinions, Plaintiff engaged in a number of daily activities inconsistent with those opinions. For example, she sought employment cleaning other people's apartments, she babysat for her grandchild, despite the anxiety it caused her, and started a GoFundMe page for her daughter's tuition. During an April 14, 2014, therapy session at which Plaintiff's husband was present, Ms. Morgan-DeVelder wrote the following:

> Mary's husband reported thinking that Mary would feel better (worry less) if she returned to work[.] He stated that she does not need to work for financial reasons[.] Mary denied thinking that returning to work would help her feel better[.] She did, however, identify one area of interest volunteering to clean the apartments of elderly people who live in her complex. Mary stated that she will talk to someone in the office at the complex regarding ways that she can advertise the service.… Mary identified "cleaning[.]" Writer noted that Mary's husband appeared excited and to agree with writer when writer further explored her thoughts about working part-time, full-time, or volunteering[.] Writer validated her idea regarding volunteering to clean people's apartments in her complex Writer helped her consider next steps to achieving this goal[.]

R. 480 (Ms. Morgan-DeVelder refers to herself as "writer" in the report, and only infrequently uses periods). The Commissioner cites to *Delgado v. Colvin*, 226 F. Supp. 3d 160, 164 (W.D.N.Y. 2016) in support of the contention that Ms. Morgan-DeVelder's endorsement of Plaintiff's idea of finding work cleaning apartments "baldly contradicted the extreme mental

limitations she assessed and disputed her opinion that Plaintiff was unable to work." Comm'r

Mem. of Law 19, Feb. 7, 2018, [ECF No. 12-1](). In *Delgado*, the Court wrote:

> [T]he ALJ gave "little weight" to the opinions of plaintiff's treating therapists…and treating psychiatric nurse practitioner…. [B]oth opined that plaintiff had "moderately severe" impairments in social functioning and some areas of concentration, persistence or pace, and [one] had stated that plaintiff was frequently hospitalized for medical reasons, and occasionally hospitalized for psychiatric reasons. The ALJ noted that none of these opinions found factual support in the record and that each was put forth by an individual who was not an "acceptable medical source" for purposes of the treating physician rule. Furthermore, these assessments conflicted with their authors' own treatment records as well as plaintiff's self-reported activities of daily living, which included timely and successful engagement in a two-year secondary degree program…and managing her household and caring for her two children as a single parent. During this period, symptoms such as panic attacks and anxiety occurred occasionally and in direct correlation to periods of noncompliance with plaintiff's treatment regimen of therapy and medication.

*Delgado*, 226 F. Supp. 3d at 164. The ALJ noted that Plaintiff's primary reason for anxiety

revolved around frustrations with her live-in adult son and lack of intimacy with her husband.

R. 22.

The ALJ also relied on a consultative examination by a psychologist, Adam Brownfield,

Ph.D. R. 22, 365–68. He diagnosed Plaintiff with panic disorder, agoraphobia, major depres-

sive disorder, and IBS. R. 368. Dr. Brownfield concluded that Plaintiff had:

> No evidence of limitation in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, and relating adequately with others. She is moderately to markedly limited in appropriately dealing with stress due to psychiatric symptoms.

R. 367. The ALJ gave Dr. Browfield's conclusions "some weight" in making his mental RFC

determination.

Other than the example of volunteering to clean the apartments of elderly clientele in her building, nothing supports the ALJ's conclusion that Plaintiff could engage in gainful employment on a regular basis. Dr. Brownfield noted she is moderately to markedly limited in appropriately dealing with stress due to psychiatric symptoms. Ian M. Deutchki, M.D., Plaintiff's treating physician, saw her on May 31, 2013, for depression. He noted that since treating her with medication, her sleeping had improved, her energy levels varied, and that getting out of the house was "easier with current medication." R. 351. Plaintiff also reported to him that her mood was dependent on whom she was around and that her "[o]ldest son 'brings out the beast in me.'" R. 351. Dr. Deutchki further noted:

> Patient reports that after an argument with her son or husband or something bad happening she experiences racing thoughts that keep her from sleeping. At times this will last for days. She denies elevated mood.

> Patient describes hearing her deceased grandmother talking to her but states the voice is in her head not external. She also sees relatives in her peripheral vision at times. She states this does not bother her. She was raised by her great grandmother who was part native american and taught her about spirits. She has always been viewed as "weird" by her family due to her seeing these spirits.

R. 352. Dr. Deutchki assessed that Plaintiff suffered from major, recurrent depression and wrote, "[t]his may represent severe depression with psychotic features, versus Major Depression with idiosyncratic spiritual beliefs. I do not think that she has bipolar disorder or a primary psychotic disorder based on today's interview." R. 352. He continued her medication (Effexor 75 BID) and advised a consultation with a psychiatrist.

In a follow-up visit with Dr. Deutchki on October 4, 2013, Plaintiff reported she remained depressed, described "seeing things that others do not see," including "bees flying in her home" and "people peering around corners or moving out of the corner of her eye," and that she "[a]wakens at night and looks around the room for spiders and other insects." R. 347. Dr. Deutchki concluded that she suffered from major, recurrent, severe depression with psychosis,

and changed her medication "from Effexor 150 BID to XR daily" and added "Risperdal 0.5 at HS." R. 347.

Plaintiff testified that her primary reason for not working concerned "the mental issues. The anxiety. The panic. The bipolar. I mean I take a lot of medicines that also causes stomach, you know cause me to still have the stomach issues, like the IBS." R. 65. She testified that noise and many people are the main triggers of her anxiety. R. 70–71.

The ALJ asked the vocational expert the following hypothetical question, and received the VE's response:

> Q. I don't know if I'm going to be hitting everything or not, because I have not seen the medical evidence—from—lots of it the most recent, yet. But we'll take a stab at it: And that's if we need more later, we'll get more later. But I'd like to start with light work which would begin for this period. Work that does not involve being in a crowd. Does not involve interacting with the general public. Jobs where super—where interaction with supervisors and coworkers is superficial or occasional. I'm looking for unskilled or semi-skilled work that would not involve any skills other than those that she has acquired in her past work. Generally with jobs that are in the—are the—are the same from day to day, but again—well, leave it out. We're just looking for unscheduled jobs or jobs that that would require her would not require her to gain the additional skills, and do not involve interacting with the public. Are in a relatively quiet environment, being indoors without we don't want to hear jackhammers or—so we're looking for an indoor environment doesn't involve interacting in a crowd or are—or working with the general public as she's done in the past. And not – no excessive noise. Are there any jobs that fit that hypothetical?
>
> A. Yes, Judge. She couldn't return to past work, but there are jobs at the light level, including cleaners….assemblers…[and] sorters.

R. 74–75.

The ALJ's decision does not explain why she accorded only "some weight" to Dr. Brownfield's assessment that Plaintiff "is moderately to markedly limited in appropriately dealing with stress due to psychiatric symptoms." R. 23. Nor did her hypothetical question to the VE quoted above, account for Plaintiff's moderate to marked inability to deal with stress.

"Because stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (internal quotation marks omitted) (citing SSR 85–15); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments").

*Windom v. Colvin*, No. 6:14-CV-06652 (MAT), 2015 WL 8784608, at *5 (W.D.N.Y. Dec. 15, 2015). Consequently, the ALJ's conclusion that Plaintiff could perform work despite her anxiety does not have substantial support in the Record.

### *Irritable Bowel Syndrome and Torn Meniscus*

Plaintiff argues that the ALJ failed to develop the record sufficiently to properly assess the functional effect of her IBS on her ability to perform work, "and just assumed that it would be covered by limiting her to light work." Pl.'s Mem. of Law 20, Dec. 1, 2017, ECF No. 8-1. The ALJ concluded that "[b]ased on her subjective complaints of knee pain…and history of gastrointestinal issues, including IBS," she was limited to light work. R. 23. Plaintiff reported that she had no limitations on lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, using her hands, seeing, hearing, or talking. R. 209–10. However, Seema Khaneja, M.D., a consultative examiner, reported that Plaintiff had "mild" limitations on her ability to kneel repetitively, squat, or climb stairs, because of knee pain. R. 373.

The ALJ did not explain the basis for her conclusion that limiting Plaintiff to light work would accommodate her IBS. Although the Commissioner argues on this appeal that Plaintiff stated her main complaint was "the mental issue," R. 65, nevertheless, the medical evidence in the record shows that the IBS continues. Plaintiff testified she has "serious IBS…[a]nd I have no control over it." R. 72. The ALJ asked her one question about IBS: "But you're being treated by your primary care physician for the IBS?" *Id.* Plaintiff responded, "Yes," and the ALJ moved

on to another subject (her knee). *Id.* The ALJ did not address at all during the hearing, or in her decision, Plaintiff's medical records showing that she experiences "abdominal cramping with bowel movement…typically 4 x day loose stool." R. 310. The ALJ did not address her vomiting "2–4 times per week bilious material as well as undigested food," and "[b]owel habits include 2–5 time daily." R. 313; R. 318 ("3–4 stools per day while on…medications, sometimes less on good days."). The ALJ did not address the IBS issues with the vocational expert, either. R. 74–75, 80. This is especially curious since the ALJ noted in her decision that Plaintiff originally stopped working "due to gastrointestinal problems…." R. 21.

Plaintiff also testified that she had learned just prior to the hearing that she suffered from a torn meniscus in her knee, diagnosed by her treating physician through the use of a magnetic resonance image ("MRI") on August 17, 2015. R. 72, 453. The only comment in the record regarding any limitations due to her knee pain came from the consultative examiner, Seema Khaneja, M.D., who wrote in her report more than a year earlier that Plaintiff had a "mild limitation" for repetitive kneeling. At the March 25, 2014, examination, Dr. Khaneja did not have the benefit of the MRI. Further, Exhibit 10F, which contains the results of the MRI, has no information about what, if any, treatment Plaintiff's treating physician recommended as a result of the torn meniscus. R. 382–455. The ALJ did not explain in her decision how she concluded that Plaintiff retained the residual functional capacity to perform light work despite the IBS and torn meniscus.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not supported by substantial evidence and denies the Commissioner's motion for judgment on the pleadings. ECF No. 12. Defendant's motion for judgment on the pleadings is granted. ECF No.

8. The Commissioner's decision is reversed and remanded for a rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk is directed to close this case. The Court directs the Commissioner to expedite processing on remand.

So Ordered.

Dated: May 7, 2018
        Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge